IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00324-NYW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. EDWARD BAKER HARRINGTON,
   a/k/a BAKER HARRINGTON,
   a/k/a E. BAKER HARRINGTON,
   a/k/a EDWARD BAKER HARRINGTON II,

    Defendant.

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

The United States of America, by and through Nicole C. Cassidy and Martha A. Paluch, Assistant United States Attorneys for the United States Attorney's Office for the District of Colorado (the "government"), and the defendant, Edward Baker Harrington, a/k/a Baker Harrington, E. Baker Harrington, and Edward Baker Harrington II ("Harrington" or the "defendant"), personally and by counsel, Mary V. Butterton, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A.   Defendant's Plea of Guilty:**

The defendant agrees:

(1)   to plead guilty to Counts 1 and 9 of the Indictment, which charge violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1957 (money laundering),

**COURT EXHIBIT 1**

respectively;

(2) to waive certain appellate and collateral attack rights, as explained in detail below;

(3) to be liable for restitution to the SBA and participating lenders in the amount estimated to be at least $1,023,005.65,[1] plus interest accruing through the date of the sentencing hearing, with additional information about apportionment between the SBA and participating lenders to be provided at the sentencing hearing; and

(4) not to contest forfeiture as more fully described below.

Mr. Harrington reserves the right to request the Court suspend payment of criminal monetary penalties (including forfeiture and restitution) during any period of imprisonment. The government opposes Mr. Harrington's request to suspend payment of criminal monetary penalties for any period of time following the entry of the Judgment.

**B.   The Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the

---

[1] As explained in detail below, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act authorized the Small Business Administration ("SBA") to guarantee loans issued under the Paycheck Protection Program ("PPP"). Under specified circumstances, the SBA agreed that it would purchase a PPP loan from the lender and pay the loan's outstanding principal balance and accrued interest. The SBA has already purchased five of Harrington's PPP loans from the original third-party lenders.

The $1,023,005.65 restitution amount is comprised of: (1) $1,012,797.95 that Harrington obtained from his fraudulent PPP loan applications; and (2) $10,207.70 of accrued interest for the five PPP loans purchased by the SBA.

In addition to the $1,023,005.65 described above, the government contends that the restitution amount should also include PPP processing fees totaling $40,674.23 that the SBA paid to the third-party lenders in connection with Harrington's fraudulent PPP loans. The defendant reserves the right to challenge the inclusion of these fees as part of restitution.

United States Attorney's Office, District of Colorado concerning fraud against the government programs described below and to move to dismiss Counts 2–8 and 10–13 of the Indictment. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, file an indictment with additional charges.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

As to sentencing, the government agrees to recommend a sentence at the bottom of the guidelines range, as calculated by the Court.

**C.      Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)     the sentence exceeds the maximum sentence provided in the statutes of conviction, 18 U.S.C. §§ 1343 & 1957;

(2)     the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 23; or

(3)     the government appeals the sentence imposed.

3

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number. The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that "extraordinary and compelling reasons" for a sentence reduction are lacking or that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

**D. Forfeiture of Assets:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461(c), whether in the possession or

control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include but are not limited to: a money judgment in the amount of the proceeds of the offenses of conviction, which is $1,012,797.95.[2] The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture, except as outlined in the paragraph below.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets or payments made towards the forfeiture money judgment be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met. The defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law. The United States will not record the forfeiture money judgment with the Clerk and Recorder. The United States first agrees to pursue collection of any available liquid substitute assets the defendant may acquire through the restitution process. The United States further agrees that any payment made toward restitution shall be credited to the forfeiture money judgment.

---

[2] No interest or lender processing fees have been included in this amount.

## II. ELEMENTS OF THE OFFENSE

A.  **Count 1 (Wire Fraud)**

The parties agree that the elements of the wire fraud offense charged in Count 1 of the Indictment are as follows:

    A.    The defendant devised a scheme to defraud;

    B.    The defendant acted with specific intent to defraud;

    C.    The defendant used, or caused another person to use, interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

    D.    The scheme employed false or fraudulent pretenses, representations, or promises that were material.[3]

B.  **Count 9 (Money Laundering)**

The parties agree that the elements of the money laundering offense charged in Count 9 of the Indictment are as follows:

    a. the defendant knowingly engaged or attempted to engage in a monetary transaction;

    b. the defendant knew that the transaction involved criminally derived property;

    c. the property had a value greater than $10,000;

    d. the property was, in fact, derived from a specified unlawful activity; and

    e. the monetary transaction occurred in the United States.[4]

### III. STATUTORY MAXIMUM SENTENCE

The maximum penalties for a violation of Count 1 (Wire Fraud, 18 U.S.C. § 1343) of the

---

[3] Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2021 Edition, § 2.57.
[4] Model Crim. Jury Instr. 9th Cir. 18.7 Money Laundering (18 U.S.C. § 1957) (2022).

Indictment are: not more than 20 years' imprisonment, a fine of not more than the greater of $250,000 or twice the gain or loss from the offense, or both; not more than 3 years' supervised release; a $100 mandatory victim's fund assessment fee; plus, restitution in an amount to be determined at the time of sentencing.

The maximum penalties for a violation of Count 9 (Money Laundering, 18 U.S.C. § 1957) of the Indictment are: not more than 10 years' imprisonment, a fine of not more than the greater of $250,000 or twice the gain or loss from the offense, or both; not more than 3 years' supervised release; a $100 mandatory victim's fund assessment fee; plus, restitution in an amount to be determined at the time of sentencing.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct.

## Background about the PPP Program under the CARES Act

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which provided emergency assistance, administered by the SBA, to small business owners suffering adverse economic effects caused by the Coronavirus ("COVID-19") pandemic. The CARES Act established several new temporary programs and expanded existing programs, including programs created or administered by the SBA.

One source of funding for small businesses was the Paycheck Protection Program ("PPP"), a program administered by the SBA that provided forgivable loans to small businesses. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, mortgage interest payments, and utilities. The CARES Act mandated that only businesses in operation on February 15, 2020 were eligible for a PPP loan.

To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications. The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the loan amount that the business was eligible to receive under the PPP. Businesses were also required to provide documentation showing their payroll expenses.

PPP loan applications were received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the

8

loan using its own monies, but the loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. The SBA paid participating lenders a processing fee for each funded PPP loan.

Small businesses could request forgiveness of up to the full amount of the PPP loan by filing a forgiveness application with the same lender. The forgiveness application required the business to certify, among other things, that the loan was used for eligible payroll and other business costs, and that the business had verified the eligible payroll and nonpayroll costs for which the business requested forgiveness. The business also was required to submit documentation to the lender verifying its payroll costs.

## PPP Loans Obtained by the Defendant

From April 2020 through September 2021, Harrington knowingly and with the intent to defraud prepared and submitted fraudulent PPP applications to SBA-approved, third-party lenders on behalf of: Alpine Search Partners LLC, Arapaho Consulting LLC, Elk Ridge Consulting, LLC, Spruce Lake Consulting LLC, Spruce Lake Search LLC, and Summit Consulting Services LLC. In these PPP applications, Harrington made materially false statements and certifications regarding, *inter alia*, his social security number, his criminal history, his ownership of other businesses, as well as the businesses' average monthly payroll and number of employees. He also submitted fraudulent documentation, including fabricated Internal Revenue Service documents and business income statements, to support his PPP applications. Harrington further falsely represented that all of the PPP funds would be used to pay eligible business expenses; in fact, Harrington intended to—and did—use the proceeds for his personal benefit.

As set forth in the chart below, the third-party lenders approved and funded 10 of these PPP loans, resulting in $1,012,797.95 being paid out to business entities that Harrington controlled. The SBA also paid $40,674.23 in processing fees to the third-party lenders for underwriting and servicing these PPP loans.

| Application Date | Loan Number | Lender | Company Legal Name | PPP Loan Amount | PPP Processing Fees |
|---|---|---|---|---|---|
| 5/1/2020 | 10442578-01 | Huntington National Bank (formally, TCF National Bank) | Elk Ridge Consulting LLC | $20,832.00 | $1,041.60 |
| 5/12/2020 | 54520374-10 | Western States Bank | Alpine Search, LLC | $66,441.65 | $3,332.08 |
| 6/4/2020 | 78370678-00 | FMS Bank (Greeley Branch) | Arapaho Consulting LLC | $99,755.00 | $4,987.75 |
| 6/12/2020 | 28649079-04 | High Plains Bank (Flagler Branch) | Summit Consulting Services LLC | $99,756.00 | $4,987.80 |
| 6/30/2020 | 87575580-00 | Freedom Bank | Alpine Search Partners LLC | $99,700.00 | $4,985.00 |
| 7/17/2020 | 50569681-07 | Flagship Bank Minnesota | Spruce Lake Search LLC | $149,200.00 | $7,460.00 |
| 8/6/2020 | 45035982-10 | Lakeview Bank | Spruce Lake Consulting, LLC | $128,400.00 | $6,420.00 |
| 8/7/2020 | 53264382-00 | Magnifi Financial CU (formerly, Central Minnesota CU) | Alpine Search Partners LLC | $149,200.00 | $7,460.00 |
| 1/19/2021 | 25932683-07 | FMS Bank (Greeley Branch) | Arapaho Consulting LLC | $99,756.65 | |
| 1/19/2021 | 18795083-08 | High Plains Bank (Flagler Branch) | Summit Consulting Services LLC | $99,756.65 | |
| | | | Total | $1,012,797.95 | $40,674.23 |

Thereafter, Harrington sought loan forgiveness for funded PPP loans by submitting fraudulent PPP loan forgiveness applications containing false representations and certifications regarding his businesses and his compliance with the PPP program rules, including rules related

to the eligible uses of PPP loan proceeds.

Harrington understands and agrees that he has an obligation to pay restitution on the amount of these PPP loans (including the PPP loans that ultimately received loan forgiveness), which is currently estimated to be $1,023,005.65, plus interest accruing through the date of sentencing.[5] Final interest figures, as well as information regarding the apportionment of restitution between the SBA and third-party lenders, will be presented at the time of sentencing. Additionally, the government contends that Harrington's restitution amount should also include the $40,674.23 of PPP processing fees that the SBA paid to third-party lenders for underwriting and servicing Harrington's PPP loans. Harrington reserves the right to argue at sentencing that these fees should not be included within restitution.

In addition to the ten PPP loans that were actually funded, Harrington also submitted another five PPP loan applications for PPP loans that were not funded.

| Application Date | Loan Number | Lender | Company Legal Name | PPP Loan Request |
|---|---|---|---|---|
| 4/8/2020 | 89188470-10 | ReadyCap Lending, LLC | Alpine Search Partners LLC | $43,500.00 |
| 6/30/2020 | 69552680-09 | MoFi | Alpine Search Partners LLC | $99,757.00 |
| 1/14/2021 | 45035982-10 | Lakeview Bank | Spruce Lake Consulting, LLC | $128,368.88 |
| 1/18/2021 | 17326483-10 | Flagship Bank Minnesota | Spruce Lake Search LLC | $149,200.00 |

---

[5] As explained in footnote 1, the $1,023,005.65 is comprised of the principal amounts that Harrington received in connection with his fraudulent PPP loan applications and the accrued interest paid by the SBA to the third-party lenders in connection with the five PPP loans that the SBA has purchased.

| 1/28/2021 | 70476680-10 | Freedom Bank | Alpine Search Partners LLC | $99,756.65 |
|---|---|---|---|---|
|  |  |  | **Total** | **$520,582.53** |

The total amount of the PPP loan applications attributed to Harrington is $1,533,380.48. However, the parties agree that the PPP loan application submitted to ReadyCap Lending, LLC on behalf of Alpine Search Partners LLC for a loan in the amount of $43,500 should not be included within the calculation of intended loss. This loan was cancelled on or about June 4, 2020 after Harrington failed to respond to the lender's request for additional documentation; its reason for denying the loan is listed as "merchant unresponsive." Accordingly, the parties agree that Harrington walked away from this PPP loan application and that this PPP loan should be excluded from a loss calculation of the purposes of sentencing. Harrington further reserves the right to argue that the appropriate measure of loss is actual loss and to challenge the inclusion of any other unfunded PPP loans in the calculation of intended loss.

## Count 1:

As charged in the Indictment, Harrington agrees that on or about May 1, 2020, to further the scheme set forth above, he knowingly prepared and submitted a fraudulent PPP application on behalf of Elk Ridge Consulting LLC to TCF National Bank (now Huntington National Bank) to obtain a PPP loan in the amount of $20,832.

On June 10, 2020, the SBA in Denver, Colorado created and certified the payment file for the PPP processing fees paid out in connection with the Elk Ridge Consulting LLC PPP loan and transmitted it via interstate wire communications from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri. After a computer operator at the U.S. Treasury disbursing office in Kansas City, Missouri performed

payment operations to complete the processing of the file, an Automated Clearing House ("ACH") payment file was transmitted to the Federal Reserve Bank ACH processing site in New Jersey. The Federal Reserve Bank in New Jersey processed the payment file and sent $1,041.60 to TCF National Bank in Columbus, Ohio, thereby completing the payment to TCF National Bank for issuing and servicing the PPP loan.

**Count 9:**

Harrington agrees that on or about June 4, 2020, he knowingly prepared and submitted a fraudulent PPP application on behalf of Arapaho Consulting LLC to FMS Bank's Greeley, Colorado branch. FMS Bank approved and funded this PPP loan in the amount of $99,755, and it deposited these proceeds into FMS Bank account xxxx2592 in the name of Arapaho Consulting LLC, which was controlled by Harrington. On or about June 9, 2020, Harrington initiated a wire transfer of $75,000 from FMS Bank account xxxx2592 to Bank of America account xxxxxxxx1816 in the name of Arapaho Consulting LLC. At the time that Harrington initiated this monetary transaction, he knew that the funds being transferred were, in fact, derived from his submission of a fraudulent PPP application to FMS Bank on behalf of Arapaho Consulting LLC.

**Acceptance of Responsibility**

The defendant accepted responsibility for his conduct in a timely fashion soon after the Indictment was returned in this case.

## VI.    ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute. The Guideline calculation below is the good faith estimate of the parties, but it is only an estimate. The parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

Count 1 (Wire Fraud):

    A.    The base guideline is § 2B1.1, with a base offense level of 7. § 2B1.1(a)(1).

    B.    A 14-level increase applies because the loss was more than $550,000 but less than $1,500,000. § 2B1.1(b)(1)(H).

    C.    A 2-level increase applies because the offense involved the defendant's use of another person's social security number to obtain PPP loans. § 2B1.1(b)(11)(C)(i).

    D.    A 2-level increase applies because the defendant derived more than $1,000,000 in gross receipts from one or more financial institution as a

        result of the offense. § 2B1.1(b)(17)(A).

   E.     The adjusted offense level for Count 1 is 25.

Count 9 (Money Laundering):

   A.     The base guideline is § 2S1.1(a), with a base offense level of 25.

   B.     A 1-level increase applies because the defendant is being convicted under 18 U.S.C. § 1957. § 2S1.1(b)(2)(A).

   C.     The adjusted offense level for Count 9 is 26.

Combined Sentence:

   A.     The total adjusted offense level is 26. § 3D1.3.

   B.     The defendant should receive a 3-level downward adjustment for timely acceptance of responsibility. The resulting total offense level is 23. §§ 3E1.1(a)–(b).

   C.     The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be III.

   D.     The career offender/criminal livelihood/armed career criminal adjustments would not apply.

   E.     The advisory guideline range resulting from these calculations is 57–71 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 46 months

(bottom of Category I) to 115 months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximums applicable to the counts of conviction.

F. Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $20,000 to $200,000, plus applicable interest and penalties.

G. Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year, but not more than 3 years.

H. Pursuant to guideline §5E1.1(a)(1), the Court shall enter a restitution order for the full amount of the victims' losses, which the parties agree will be at least $1,023,005.65, plus interest accruing through the date of the sentencing hearing. The government further contends that $40,674.23 of PPP processing fees incurred by the SBA should be included in the restitution order. The defendant reserves the right to challenge the inclusion of these fees in restitution.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement.   There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied.   In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

3/23/23
Date

EDWARD BAKER HARRINGTON
Defendant

3/23/23
Date

MARY V. BUTTERTON
Attorney for Defendant Harrington

3/23/23
Date

NICOLE C. CASSIDY
MARTHA A. PALUCH
Assistant United States Attorneys