IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 22-cr-00324-NYW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

EDWARD BAKER HARRINGTON,
    *a/k/a E. Baker Harrington,*
    *a/k/a Edward Baker Harrington, II,*
    *a/k/a Baker Harrington,*

      Defendant.

## OBJECTIONS AND CORRECTIONS TO THE PRESENTENCE REPORT

Mr. Edward Baker Harrington, by and through his counsel Mary V. Butterton, hereby respectfully responds to the Presentence Report (Doc. 27).

### OBJECTIONS AFFECTING THE GUIDELINE CALCULATION

<u>Paragraphs 37, 45, 49, 102</u>: Mr. Harrington objects to the offense level calculation contained in the Presentence Investigation Report. His total offense level should be 23, not 25; paired with a criminal history category III, his correct advisory sentencing range is 57 to 71 months.

In the Plea Agreement, the Government and Mr. Harrington agreed that the loss attributed to Mr. Harrington – whether measured as actual or intended loss -  was between $550,000 and $1,500,000. Doc. 25 at 14. The parties agreed that Mr. Harrington is responsible for $1,012,797.95 in actual loss; that amount is the sum of the proceeds Mr. Harrington received from loans for which he was not eligible. Doc. 25 at 10.  The parties further agreed that if the Court uses intended loss

as the measure of harm, that amount is $1,489,008.48, including four loans for which Harrington completed the application process – that is, submitted applications and supporting documentation required to fully complete the loan application. *Id.*

The Government asserts that intended loss is the appropriate measure of loss, relying on Application Note 3(A)(ii) to §2B1.1. Mr. Harrington asserts that the Court should use actual loss as the measure of loss, because "intended loss" as defined in the commentary to §2B1.1 is an improper expansion of a non-ambiguous term of the Sentencing Guidelines.[1]  However, the parties' differences in view becomes somewhat moot as both amounts are within the range covered by §2B1.1(b)(1)(H) – that is, both amounts are between $550,000 and $1,500,000. Accordingly, under either theory, Mr. Harrington should receive a +14 increase in his offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(H).

In the Presentence Investigation Report (Doc. 27), the United States Probation Office (USPO) included in its loss calculation a $43,500 loan application that Mr. Harrington submitted but provided no supporting documentation for – essentially abandoning the application shortly after its origin. The inclusion of this loan as intended loss meant that the USPO applied a 16-level increase in offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(H), as that addition brought the intended loss calculation to just over $1.5 million.

---

[1] It is Mr. Harrington's position that the Court should use actual loss, rather than intended loss, as the measure of harm because the commentary to §2B1.1 improperly expands "loss" beyond its plain meaning. In *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408  (2019), the Supreme Court reinforced the fundamental precept of administrative law that courts shall not defer to an agency's interpretation of its own  regulation "unless the regulation is genuinely ambiguous." Under *Stinson v. United States*, Guideline commentary should be treated like an agency's interpretation of its own legislative rule. 508 U.S. 40-41 (1993).

The § 2B1.1(b)(1) Guideline text is not ambiguous, yet the commentary impermissibly expands the Guideline text with a wildly counterintuitive definition of the word "loss." Under U.S.S.G. § 2B1.1(b)(1)(I), the offense level is increased based on the amount of "loss." Because the  meaning  of  loss  in  the  Guideline  text  is  unambiguous, the commentary's definition, which changes the ordinary meaning of loss to also include "intended" loss, results in an impermissible expansion of the regulation by the U.S. Sentencing Commission. By adding intended loss to the meaning of "loss," the commentary sweeps more broadly than the plain text of the Guideline, and should be disregarded. *See United States v. Kirschner*, 995 F.3d 327, 333 (3rd Cir. 2021).

The USPO's inclusion of the $43,500 as intended loss is incorrect. As outlined in the Plea Agreement, both the Government and Mr. Harrington agree that this application should not be included as intended loss, because Mr. Harrington walked away from that application.

The commentary to §2B1.1 defines "intended loss" as "pecuniary harm the defendant purposely sought to inflict..." U.S.S.G. §2B.1.1 App. N. 3(A)(ii) Here, however, Mr. Harrington didn't purposefully seek the $43,500; he did not complete the process to even attempt to acquire it. In this way, he purposely *avoided* seeking the money that could have resulted from the loan.

For that reason, the Probation Office's application of the +16 increase in offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(I) is in error. Under a correct measurement either of actual loss or intended loss, Mr. Harrington is subject to the 14-level increase under U.S.S.G. § 2B1.1(b)(1)(H). The resulting guideline range (after other undisputed specific offense characteristics, a reduction for acceptance of responsibility pursuant to §3E1.1, and a criminal history category of III) is 57 to 71 months.

<u>CORRECTIONS NOT AFFECTING THE GUIDELINE CALCULATION</u>

<u>Paragraph 52</u>: Mr. Harrington objects to the factual description of this conviction. The PSR writer apparently relied on a police report; like many police reports, the information contained within it did not accurately reflect the facts as ultimately found by the Court.

Mr. Harrington was convicted of this offense after being underpaid by his employer and, in a series of bad decisions as a Senior Human Resources Manager, took matters into his own hands by adjusting his paycheck accordingly. The loss to the company was ultimately found to be just over $19,000. *See* Exhibit A (financial summary/payment schedule for Denver District Case no. 2018-CR-005454). Of note, the Colorado Division of Labor Standards and Statistics later

3

found Mr. Harrington's employer did underpay him; that company was ultimately ordered to pay him fees and penalties totaling over $10,000. *See* Exhibit B.

Paragraph 60: Mr. Harrington's father was captain of the Summerall Guards when he was at The Citadel military college, not as part of his career in the Air Force.

Paragraph 89: As of this filing, Mr. Harrington has provided the requested financial information to the United States Probation Office.

Paragraph 97: Mr. Harrington is no longer subject to these South Carolina or federal tax liens as they have been satisfied. *See* Exhibit C (tax lien satisfaction records).

        Respectfully submitted,

        VIRGINIA L. GRADY
        Federal Public Defender


        s/ Mary V. Butterton
        MARY V. BUTTERTON
        Assistant Federal Public Defender
        633 17th Street, Suite 1000
        Denver, CO  80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        Mary_Butterton@fd.org
        Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, I filed the foregoing ***Objections and Corrections to the Presentence Report*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Martha A. Paluch, Assistant United States Attorney
Email:  Martha.paluch@usdoj.gov

Nicole C. Cassidy, Assistant United States Attorney
Email: Nicole.Cassidy@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Edward Baker Harrington (via U.S. mail)

>s/ Mary V. Butterton
>MARY V. BUTTERTON
>Assistant Federal Public Defender
>633 17th Street, Suite 1000
>Denver, CO  80202
>Telephone:  (303) 294-7002
>FAX:  (303) 294-1192
>Mary_Butterton@fd.org
>Attorney for Defendant