# Exhibit B

JOHN HICKENLOOPER
Governor

ELLEN GOLOMBEK
Executive Director

ALEXANDRA E. HALL
Director



**DEPARTMENT OF LABOR AND EMPLOYMENT**
**DIVISION OF LABOR STANDARDS AND STATISTICS**

633 17th Street, Suite 600,  Denver, Colorado 80202-2107
Telephone (303) 318-8441  Toll-Free 1-888-390-7936  Fax (303) 318-8400

www.coloradolaborlaw.gov

## COLORADO DIVISION OF LABOR STANDARDS AND STATISTICS
## WAGE AND HOUR CITATION

### I. Introduction

The Colorado Division of Labor Standards and Statistics ("Division") has received wage complaint #0595-16 from Edward Harrington ("claimant") against RTL Networks, Inc. ("employer"). Pursuant to C.R.S. § 8-4-101, et seq. (the "Colorado Wage Act"), the Division is required to investigate all wage complaints received. The Division conducted an investigation of the complaint, and upon review and consideration of all available documentation and evidence, this Citation is issued pursuant to Colorado wage and hour laws and regulations.

Based on all of the available evidence, the Division concludes that the employer owes wages to the claimant in the amount of $4,998.61 and penalties in the amount of $6,248.26. The Division also concludes that the employer owes fines to the Division in the amount of $4,350.00.

### II. Investigation & Evidence

The claimant alleged that the employer owes him $5,146.21 in total unpaid wages, consisting of $1,948.32 in unpaid final wages and $3,197.89 in unpaid vacation upon separation. Specifically, the claimant alleged that the employer reduced his prorated salary of $48.89 per hour to a lesser rate of $8.30 per hour for all 48 hours he worked during the final pay period of his employment, failed to pay him his 65.41 hours of earned, unused vacation unpaid upon separation, and failed to pay his final wages timely.

Upon receipt of the complaint, the Division conducted the following investigative steps, and received or collected the following evidence:

- On February 1, 2016, the Division received a written wage complaint, in which the claimant alleged unpaid final wages and unpaid vacation upon separation. In support of his allegations, the claimant submitted a schedule of the unpaid hours he worked during the final pay period of his employment and corresponding calculations of wages owed, as well as the following additional evidentiary documents:
(1) a copy of a document entitled "Employee Payroll Advance – Repayment and Deduction Authorization" ("authorization agreement") signed by the claimant on December 30, 2015 and setting forth the schedule by which he agreed to repay the remaining balance of his payroll advances in the amount of $10,996.53 by December 22, 2016 in the event of his continued employment, and further providing that "If I *voluntarily resign* (emphasis added) my position with RTL Networks, Inc. before the advance is repaid in full, I hereby authorize RTL Networks, Inc. to withhold any unpaid amount from my final paycheck…";
(2) a copy of a January 25, 2016 email from the employer to the claimant stating that his employment was terminated as of that date;
(3) a copy of the valid written demand for payment of wages that the claimant sent to the employer via email on January 29, 2016;

(4) a copy of the claimant's February 1, 2016 paystub reflecting 48 hours of work performed at a rate of only $8.30 per hour, totaling $398.40 in gross earnings that did not include the 65.41 hours of available vacation also shown on the paystub; and

(5) a copy of a February 1, 2016 email from the claimant to the Division, in which he summarizes his arguments and provides calculations to support the amount of wages claimed.

- On April 26, 2016, the Division sent a Notice of Complaint, along with a copy of the complaint and supporting documents, to the employer setting forth the claimant's allegations. The Division required the employer's response, including a completed Employer Response Form, copies of the claimant's itemized pay statements from March 1, 2015-January 31, 2016, and a copy of its written vacation policy, by no later than May 9, 2016.

- On May 6, 2016, the Division received a written request from the employer's attorney for a three-week extension to the deadline to respond to the Notice of Complaint. The Division found good cause to grant the request and extended the response deadline to May 31, 2016.

- On May 9, 2016, the Division received the employer's initial written response to the Notice of Complaint. Therein, the employer indicated that it had paid $546.00 in additional wages to the claimant, but denied owing the remaining wages claimed. As proof of payment, the employer submitted copies of direct deposit vouchers for $398.40 on February 1, 2016, $66.96 on February 4, 2016, and $80.64 on March 7, 2016. The employer also provided a written explanation, which included the following alleged chronology of events:
    o On January 25, 2016, the employer terminated the claimant's employment for stealing money from the company.
    o That same day, the employer filed a police report with the Denver Police Department.
    o On February 1, 2016, the employer paid the claimant the equivalent of $8.30 per hour, which it then believed the state minimum wage rate to be, for all 48 hours he worked during the final pay period of his employment from January 16-25, 2016 and deducted the remainder of his paycheck pursuant to C.R.S. § 8-4-105.
    o On February 4, 2016, the employer paid the claimant the difference between the rate of $8.30 per hour that it paid him on February 1, 2016 and the minimum wage rate of $8.31 per hour, plus an additional 8 hours.
    o On March 7, 2016, the employer paid the claimant the difference between the amount it had then paid him to date and the prorated weekly salary of $455.00 that it determined it should have paid him to maintain his exempt status as a salaried employee under the Fair Labor Standards Act ("FLSA").

- On May 31, 2016, the Division received the employer's first supplemented response to the Notice of Complaint. Therein, the employer reiterated its earlier contentions and further described the claimant's various payroll advances and alleged misappropriations. The employer also presented various arguments as to why the deductions made from the claimant's final paycheck were permissible and why it owed no further wages to the claimant. The employer also referred to a police report filed with the Denver Police Department on January 25, 2016 ("Exhibit E"), the copies of the direct deposit vouchers that it previously submitted with its initial response on May 9, 2016 ("Exhibit F"), a payroll register for the period from February 16, 2015-December 31 2016 containing the claimant's requested itemized pay statement

Colorado Wage Complaint #0595-16
Edward Harrington vs. RTL Networks, Inc.

information ("Exhibit G"), the copy of the requested Employer Response Form that it previously submitted with its initial response on May 9, 2016 ("Exhibit H"), and a copy of its requested vacation policy, as well as other pertinent policies excerpted from the RTL Employee Handbook ("Exhibit I"), but failed to include any of those items with its response. The employer's response did include the following supporting documents:

(1) a job description expressly providing that the claimant's position of Human Resources Manager was exempt and responsible for both ensuring accurate processing of payroll and serving as the payroll backup ("Exhibit A");

(2) a discussion summary of the primary events preceding a June 18, 2015 discussion between the claimant and the employer regarding the payroll advances that he had received and the key points of the agreed upon plan for repayment, which the claimant purportedly wrote and apparently signed on June 19, 2015 ("Exhibit B");

(3) a copy of the authorization agreement previously submitted by the claimant with his complaint on February 1, 2016 ("Exhibit C"); and

(4) a draft audit report produced by RGL Forensics, an independent third-party auditor, dated April 21, 2016 and detailing the scope of its investigation and preliminary conclusion that the claimant misappropriated a total of $21,676.33 in funds from the employer's payroll accounts ("Exhibit D").

- On July 12, 2016, the Division sent a Notice of Investigation Extension to each party.

- On July 22, 2016, the Division received the employer's second supplemented response to the Notice of Complaint. Therein, the employer restated its principal arguments, namely, that it properly deducted amounts from the claimant's final paycheck to cover costs resulting from his purported theft from the company's payroll (C.R.S. § 8-4-105(1)(c)), or alternatively, for the amount of wages that he improperly disbursed to himself while "entrusted" to distribute the company's payroll (C.R.S. § 8-4-105(1)(e)). With its response, the employer submitted a copy of RGL Forensics' May 31, 2016 final audit report concluding that the claimant misappropriated a total of $22,221.84 in funds from the employer's payroll accounts and the claimant's June 3, 2016 response letter, both of which the employer included as attachments in a July 18, 2016 email to the Denver Police Department.

- On October 14, 2016, the Division sent a Notice of Dispute letter to the claimant along with a copy employer's response. The Division requested the claimant's response, including any additional information or documentation relevant to the claim, by October 28, 2016. To date, the Division has received no response from the claimant.

### III. Analysis

1. Applicable Law

C.R.S. § 8-4-101(14)(a)(I) defines wages or compensation as "[a]ll amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, sub-partnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the employee demanding payment. No amount is considered

to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article."

Pursuant to C.R.S. § 8-4-101(14)(a)(III), vacation pay earned in accordance with the terms of any agreement is considered "wages" or "compensation." If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee.

Except as defined in C.R.S. § 8-4-105, Colorado law prohibits deductions from an employee's wages.  In order to be permitted under Colorado law, a deduction must be:
   a) Mandated by law; or
   b) For a loan, an advance, goods or services, or equipment or property provided by an employer to an employee, if pursuant to an enforceable written agreement that is not in violation of the law; or
   c) Taken to cover the replacement cost of a shortage due to theft by an employee if a report has been filed with law enforcement; or
   d) Authorized by the employee for reasons not listed in a, b, or c above if the authorization is revocable; or
   e) Taken to cover the amount of money or the value of property that a terminated employee failed to properly pay for or return to the employer.

The final subsection of this provision, C.R.S. § 8-4-105(2), states: "Nothing in this section authorizes a deduction below the minimum wage applicable under the 'Fair Labor Standards Act of 1938', 29 U.S.C. sec. 201 et seq."

The Colorado Minimum Wage Order (7 C.C.R. 1103-1) regulates wages, hours, working conditions and procedures for certain private sector employers and employees for work performed within the boundaries of the state of Colorado in only the following industries: Retail and Service; Commercial Support Service; Food and Beverage; and Health and Medical.

Pursuant to the inflation adjustment requirement of Article XVIII, Section 15, of the Colorado Constitution, if either of the following two situations applied to an employee, then the employee was entitled to the state minimum wage of $8.31 or the state tipped employee minimum wage of $5.29, effective January 1, 2016:

1. The employee was covered by the minimum wage provisions of the Colorado Minimum Wage Order, or

2. The employee was covered by the minimum wage provisions of the Fair Labor Standards Act.

In accordance with Colorado Minimum Wage Order Number 31, the state minimum wage of $8.31 and the state tipped minimum wage of $5.29 applied to all work performed in 2016.

Pursuant to C.R.S. § 8-4-106, an employer may apply previous mistaken overpayments (i.e., those wages unintentionally paid before they were due) to subsequent pay periods, but is obligated to pay at least the balance of wages owed to the employee.

Pursuant to C.R.S. § 8-4-109(1)(a), when an employer terminates an employee, the employer must generally pay the employee all unpaid, earned, vested and determinable wages immediately.  However, there are three exceptions to this requirement.  If, at the time of termination, the employer's accounting unit responsible for the

drawing of payroll checks is not regularly scheduled to be operational, then final payment of wages must be made no later than six hours after the start of that accounting unit's next regular workday. If the employer's accounting unit is located off the work site, then final payment of wages must be made within twenty-four hours of the start of that accounting unit's next regular workday. Finally, pursuant to C.R.S. § 8-4-105(1)(e), if the employer has entrusted property to the employee during his or her employment, the employer may take up to ten days to audit and adjust for the returned property before final payment must be made.

2. Facts and Reasoning

The Division concludes that the employer violated Colorado wage and hour laws or regulations by failing to timely pay the claimant his final wages following his termination, impermissibly taking deductions from his final wages that resulted in payment of less than the minimum wage for all hours he worked during the final pay period of his employment, and failing to pay his earned, unused vacation hours upon his separation from employment.

The claimant alleges that the employer owes him $5,146.21 in wages for reducing his salary to $8.30 per hour during the final pay period of his employment, failing to pay his earned, unused vacation hours upon separation, and failing to pay his final wages timely.

In support of his allegations, the claimant submitted various supporting documents, including an authorization agreement detailing the agreed upon repayment schedule for the remaining balance of his payroll advances *in the event of his continued employment* and authorizing the deduction of any unpaid amounts from his final paycheck *if he voluntarily resigned*. The claimant also submitted a copy of his final paystub reflecting payment of only $8.30 per hour for all hours worked and no payment for the 65.41 hours of available vacation also shown on the paystub.

The employer argues that it permissibly deducted amounts from the claimant's final wages to cover costs resulting from his purported theft from the company's payroll, pursuant to C.R.S. § 8-4-105(1)(c), or alternatively, for the amount of wages that he improperly disbursed to himself while "entrusted" to distribute the company's payroll, pursuant to C.R.S. § 8-4-105(1)(e). The employer also argued that the claimant's payroll advances for $3,000.00 on June 8, 2015 and $1,275.12 on January 22, 2016 represented overpayments that it was allowed to recover from the claimant's later paychecks without his authorization, and which did not qualify as deductions subject to C.R.S. § 8-4-105.

The employer's deduction from the claimant's final wages does not meet the requirements of any of the permissible deductions listed in C.R.S. § 8-4-105. Were it not for the precise language in the December 30, 2015 authorization agreement making the repayment schedule contingent on the claimant's continued employment and authorizing the deduction of any unpaid amounts from his final paycheck only if he voluntarily resigned, C.R.S. § 8-4-105(1)(b) likely would have applied. By including only those specific eventualities in language of the authorization agreement, however, the employer implicitly excluded the continued repayment of the claimant's payroll advances, or the authorized deduction of any unpaid amounts, in the event of his termination. As such, the employer's deduction from the claimant's final paycheck for reimbursement of payroll advances was not pursuant to an enforceable written agreement, and thus was not permissible under C.R.S. § 8-4-105(1)(b).

Colorado Wage Complaint #0595-16
Edward Harrington vs. RTL Networks, Inc.

The employer principally argues that the deduction from the claimant's final paycheck was permissible under C.R.S. § 8-4-105(1)(c). That subsection authorizes those deductions "necessary to cover the replacement cost of a shortage due to theft by an employee *if a report has been filed with the proper law enforcement agency in connection with such theft pending a final adjudication by a court of competent jurisdiction* (emphasis added)…"

While the employer claims to have filed a report with the Denver Police Department on January 25, 2016, and referred to the report in each of its responses to the Notice of Complaint, it neglected to submit a copy of the report as evidence. Nor did the Division's search of court cases in Colorado reveal any pending criminal charges against the claimant. In the absence of a police report pertaining to the claimant's alleged theft or evidence of a pending final adjudication of the matter, C.R.S. § 8-4-105(1)(c) does not apply.

The employer next argued that, even if C.R.S. § 8-4-105(1)(c) does not apply, its deduction from the claimant's final paycheck was permissible under C.R.S. § 8-4-105(1)(e). That subsection authorizes deductions "for the amount of money or the value of property that the employee failed to pay or return to the employer in the case where a terminated employee was *entrusted during his employment with the collection, disbursement, or handling of such money or property* (emphasis added)."

The employer contends that it entrusted the claimant with the distribution of the company's payroll during his tenure as evidenced by his job description, which expressly included overseeing payroll and ensuring its accuracy. However, the employer never entrusted the claimant to disburse those payroll funds that it ultimately deducted from his final paycheck *to himself*. On the contrary, the employer reprimanded the claimant and eventually terminated his employment for doing so. Moreover, the parties entered into an authorization agreement that would have provided for the repayment of those funds were it not for the employer's failure to address repayment in the event of the claimant's termination. As such, C.R.S. § 8-4-105(1)(e) does not permit a deduction in these circumstances.

Finally, the employer argues that the disbursements of $3,000.00 and $1,275.12 made to the claimant on June 8, 2015 and January 22, 2016, respectively, constituted "overpayments" that it simply recouped, rather than deducted, from the claimant's final paycheck. Pursuant to C.R.S. § 8-4-106, an employer may recover previous overpayments from an employee's wages during subsequent pay periods. However, the Division has interpreted C.R.S. §§ 8-4-105 and 8-4-106 as describing mutually exclusive scenarios in which an employer can legally withhold amounts from an employee's wages.

The employer primarily contends that these disbursements were among the transactions amounting to theft by the claimant under C.R.S. § 8-4-105(1)(c), a convincing argument were it not for the employer's failure to submit a copy of the police report and evidence of the pending litigation required by that subsection. Because these disbursements, and the employer's resulting deductions, clearly fall within the circumstances contemplated by C.R.S. § 8-4-105(1)(c), the employer's alternative argument that the deductions were, in fact, recovered overpayments is not persuading.

Based on the foregoing, the employer was legally obligated to pay the claimant's for all hours of work that he performed during the final pay period of his employment at his agreed upon rate of pay immediately following his termination on January 25, 2016, or shortly thereafter, in accordance with C.R.S. § 8-4-109(1)(a). The employer was also required to pay the claimant his earned, unused vacation hours upon his separation from employment, in accordance with C.R.S. § 8-4-101(14)(a)(III). However, the claimant's final paycheck, which

the employer did not provide to him until February 1, 2016, reflected payment of less than the minimum wage for all hours of work that he performed during that period and did not include payment for the 65.41 hours of available vacation listed on his final paystub.

The Division therefore finds that the employer failed to pay the claimant's final wages timely following his termination.

The Division further finds that the employer impermissibly deducted amounts from the claimant's final wages, resulting in payment of less than the minimum wage for all hours he worked during the final pay period of his employment.

The Division further finds that the employer failed to pay the claimant's earned, unused vacation hours upon his separation from employment.

3. Calculation of Wages Owed to the Claimant

Prorated salary of $48.89 per hour × 113.41 payable hours (40 regular hours + 8 holiday hours + 65.41 vacation hours) = $5,544.61 in final wages owed - $546.00 in wages paid ($398.40 on February 1, 2016 + $66.96 on February 4, 2016 + $80.64 on March 7, 2016) = $4,998.61 in remaining wages owed.

The Division determines that the employer owes the claimant $4,998.61 in total unpaid wages, earned on or after January 1, 2015.

 4. Calculation of Penalties Owed to the Claimant

The claimant sent a written demand for payment of wages to the employer on January 29, 2016. The employer failed to pay all earned wages within 14 days after the written demand was sent. The employer is liable for penalties on unpaid wages earned on or after January 1, 2015 and not paid within 14 days after a written demand or Notice of Complaint was sent, in accordance with C.R.S. § 8-4-109(3)(b).

The Division determines that penalties are owed to the claimant in the amount of $6,248.26.

This amount was determined by selecting the greater of the values below:

 1. The employee's average daily earnings* × 10 days.

 OR

 2. 125% percent of $4,998.61 = $6,248.26.

*The Division was unable to determine the claimant's average daily earnings based on the information provided by the parties. Therefore, the Division calculated the applicable penalties using the second option described under C.R.S. 8-4-109(3)(b), namely, 125 percent of the wages owed to the employee.

5. Calculation of Fines Owed to the Division

The Division determines that the employer owes fines to the State of Colorado for the following violations:

   a. <u>Non-Payment of Wages up to $50 per day Fine</u>

   In accordance with C.R.S. § 8-4-113(1)(a), a fine of $1,350.00 for failure to pay wages is assessed upon the employer. Wages have been owed to claimant for more than 90 days.

   b. <u>Non-Response Fines of $250 per Occurrence</u>

   In accordance with C.R.S. § 8-4-113(1)(b), a fine of $250.00 for failure to respond to Division notice requiring a response is assessed upon the employer. The employer failed to respond *completely* to the Notice of Complaint sent on April 26, 2016.

   c. <u>Pay Statement Fine</u>

   In accordance with C.R.S. § 8-4-103(4.5), a fine of $2,750.00 for itemized pay statement violations is assessed upon the employer. The employer failed to produce complete pay statement records for 11 months (i.e., March 1, 2015-January 31, 2016).

The total amount of fines owed by the employer to the Division is $4,350.00.

**IV. Conclusion**

For the foregoing reasons, the Division concludes the employer owes the claimant $4,998.61 in wages and $6,248.26 in penalties, as set forth in the attached Notice of Assessment. The employer must pay whatever portion of these wages and/or penalties remains unpaid to the claimant immediately. The employer must also pay fines to the Division, as set forth in the attached Notice of Assessment.

Within 35 calendar days of the date of this Notice, unless this Citation is appealed by either party or terminated by the claimant, this is the final decision of the Colorado Department of Labor and Employment.

Dated this 4th day of August, 2016,

Division of Labor Standards and Statistics
Colorado Department of Labor and Employment
633 17th Street, Suite 600
Denver, Colorado 80202-2107