**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   22-cr-00324-NYW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. EDWARD BAKER HARRINGTON,
   a/k/a BAKER HARRINGTON,
   a/k/a E. BAKER HARRINGTON,
   a/k/a EDWARD BAKER HARRINGTON II,

    Defendant.
_____

**GOVERNMENT'S SENTENCING STATEMENT AND
RESPONSE TO DEFENDANT'S MOTION FOR NON-GUIDELINE SENTENCE AND
DEFENDANT'S SENTENCING STATEMENT (ECF NO. 35)**
_____

At the July 14, 2023 sentencing hearing, the government will respectfully request that the Court sentence defendant Edward Baker Harrington to 57 months' imprisonment, followed by 3 years' supervised release.  The government will further request that the Court enter a restitution order for $1,078,033.50, which represents the full amount of loss sustained by the victims of the defendant's scheme.

The United States Probation Officer recommends a sentence of 60 months' imprisonment, followed by 3 years' supervised release.  (ECF No. 36-1.)  The defendant requests a term of imprisonment of twelve months and one day, followed by 3 years' supervised release.  (ECF No. 35 at 2.)

I. **Guidelines Calculation**

Following the defendant's guilty plea to one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. § 1957, the United States Probation Office submitted to the Court a presentence investigation report calculating the defendant's offense level at 25 and criminal history category at III, which results in a guidelines range of 70–87 months' imprisonment. (ECF No. 36 ("PSR") ¶¶ 49, 55, 103.)

The parties have submitted objections to the Probation Office's calculation of intended loss and contend that the defendant's offense level should instead be 23, resulting in a guidelines range of 57–71 months' imprisonment.[1] (ECF Nos. 28 & 29.)

II. **The Government's Requested Sentence Will Effectuate the Goals of 18 U.S.C. § 3553(a)**

During sentencing, the Court must calculate the sentencing range recommended by the United States Sentencing Guidelines ("USSG") and consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018). A sentence of 57 months' imprisonment appropriately balances the § 3553(a) factors, particularly the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence to

---

[1] As set forth in the parties' objections to the PSR and the Plea Agreement, the parties agree that the defendant effectively walked away from the ReadyCap Lending LLC loan application submitted on behalf of Alpine Search Partners LLC for a loan in the amount of $43,500, and that this loan should not be counted towards the defendant's intended loss. (Plea Agreement at 12; ECF Nos. 28 & 29.)

reflect the seriousness of the crime, deter future criminal conduct, and avoid unwarranted sentencing disparities.

A.   **Nature and Circumstances of the Offense**

This case involves an individual who brazenly filed fraudulent Paycheck Protection Program ("PPP") applications to obtain more than a million dollars of funds intended to serve as a lifeline for struggling businesses during an unprecedented global pandemic.  The nature and circumstances of the defendant's offense warrants a guideline sentence.

The defendant demurs, arguing that his businesses were the kind of businesses that should have qualified for pandemic relief but for his criminal history, and he suggests that he merely "exaggerated his needs and lied in an effort to receive loan approval."   (ECF No. 35 at 1, 4.)   But the defendant did not dip into these disaster relief programs through a one-time mistake or by merely falsely checking one box regarding his criminal history.   To the contrary, he submitted at least fifteen fraudulent PPP applications to numerous lenders over the course of multiple months.   He made *numerous* false statements in his PPP borrower applications, including false statements and certifications regarding his businesses' number of employees and average monthly payroll, his prior criminal history, his ownership of other businesses, and his intent to use loan proceeds only for business-related purposes in accordance with the PPP guidelines.   In an attempt to avoid detection, he listed the social security number belonging to his deceased sister as his own, and he applied for loans using various iterations of his name.   He fabricated tax documents, wage statements, and income

3

statements to support his false statements regarding his businesses, and he created new bank accounts for his business entities to deposit his ill-gotten gains. As a result of his scheme, the defendant obtained ten PPP loans totaling over one million dollars, and he intended to obtain hundreds of thousands of dollars more. He then sought— and obtained—loan forgiveness for many of these PPP loans by falsely certifying that he used the loan proceeds in accordance with PPP requirements. The defendant's offense is egregious and warrants a guidelines sentence.

Moreover, the defendant's contention that the "seriousness of the harm created by this crime is much less than traditional fraud against individual victims" is without merit.[2] (ECF No. 35 at 9.) After all, PPP funds were neither free nor unlimited: through the Coronavirus Aid, Relief, and Economic Security Act, Congress authorized limited pools of funds that ran out, after which time businesses could no longer take

---

[2] The defendant also argues that enhancement under USSG § 2B1.1(b)(17) is not warranted because he did not create the underlying harm that the enhancement was intended to deter. (ECF No. 35 at 6–8.) The government disagrees.

While one rationale of § 2B1.1(b)(17) is surely to provide an additional period of incarceration for crimes that create possible spillover effects on the financial system, a defendant's crime does not need to destabilize the financial system or cause more than $1,000,000 of loss to any single financial institution to warrant the two-level enhancement. *See United States v. Price*, 2023 WL 2447446, at *2 (5th Cir. Mar. 10, 2023) (affirming application of 2-level enhancement where the defendant received $1,689,952 in fraudulent PPP loans from two federally insured banks); *United States v. Peterson*, 823 F.3d 1113, 1125 (7th Cir. 2016) (affirming application of 2-level enhancement where defendant obtained $300,000 and $816,169 from two separate financial institutions). The government further notes that if the defendant's crimes had, in fact, jeopardized the safety and soundness of any financial institution, he may have faced *additional* sentencing enhancements pursuant to USSG §§ 2B1.1(b)(17)(B) and 2B1.1(b)(2).

advantage of the programs. Thus, the defendant's fraud not only came at the expense of the American taxpayer, but also at the expense of legitimate businesses who were struggling to keep afloat during a global pandemic.

Further, the defendant did not pour the PPP funds (even if illicitly obtained) into his businesses. The defendant argues that "he used the money to live" and emphasizes that he used loan proceeds for housing, food, and college tuition. (*Id.* at 5.) While he may have used a portion of the million dollars of proceeds in such a manner, he also funneled substantial sums of taxpayer funds to support his lavish lifestyle, purchasing a 2017 BMW Model X5 (purchased in his wife's name), a 2015 GMC Yukon (purchased in the defendant's own name), real estate in Idaho Springs, CO, jewelry, vacations, cryptocurrency, furniture, and other luxury expenses. To the extent that the defendant claims he is now indigent, it is the solely result of his own frivolous spending.

**B.    History and Characteristics of the Defendant**

This is the defendant's third conviction in five years. The defendant has two prior convictions for felony theft in Colorado (Denver County District Court Case No. 2018CR5454) and Montana (Gallatin County District Court Case No. DC-2019-512). The facts of his prior criminal cases—outlined in the defendant's motion for a non-guidelines sentence—as well as the facts of this case, evince the defendant's lack of regard for the wrongfulness of stealing and his proclivity to wrongfully take what he believes he is owed.

Moreover, the defendant's prior experiences with the criminal justice system did little to deter him from engaging in criminal conduct. Indeed, the defendant began engaging in the instant offense *while on probation in Colorado and while facing felony charges in Montana*. He applied for ten fraudulent PPP loans prior to pleading guilty to felony theft in his Montana case, and he applied for five fraudulent PPP loans after pleading guilty to felony theft in that case. A guidelines sentence is necessary to provide specific deterrence to this defendant.

Importantly, it was not the defendant's lot in life that led him to commit his crime; it was greed. This 59-year-old defendant has a master's degree in Personnel and Employment relations and has an extensive work history within the Human Resources field. (PSR ¶¶ 74–86.) The fact that the defendant had ample opportunities to make legitimate income weighs in favor of a guidelines sentence. As the Seventh Circuit has recognized, "[c]riminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999).

Accordingly, the history and characteristics of the defendant and the need to provide specific deterrence weighs in favor of a guidelines sentence.

## C.   General Deterrence and Public Protection

The need for a guidelines sentence to protect the public and provide general deterrence is particularly pronounced within the context of white-collar crime. *See United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (recognizing that

"[d]efendants in white-collar crimes often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment" (quoting *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013))); *United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." (quoting *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013))).

Accordingly, the government believes that a Guidelines sentence is needed to provide general deterrence and promote respect for the rule of law.

### D. A Guidelines Sentence Is Needed to Avoid Unwarranted Sentencing Disparities

A Guidelines sentence also avoids unwarranted sentencing disparities between white-collar sentences and sentences for other crimes, as well as unwanted sentencing disparities with other defendants who have been sentenced in this district for COVID-19-related fraud. *See United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) ("One of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes.").

In this district, sentences near or in the applicable Guidelines range routinely have been found appropriate for persons convicted of similar crimes. *See United States v. Foreman*, 21-cr-00165-RM (66-month sentence based on 63–78-month Guidelines range); *United States v. Lain*, 21-CR-00175-WJM (32-month sentence

7

based on 41–51-month Guidelines range where defendant had repaid millions in restitution prior to sentencing); *United States v. Stonebarger*, 21-CR-00392-RM (41-month sentence based on 37–46-month Guidelines range); *United States v. Zaghab*, 21-CR-00188-RBJ (30-month sentence based on 33–41-month Guidelines range).

Considering the individualized circumstances of other cases in this district that also have involved pandemic relief fraud, the government believes a guidelines sentence of 57 months' imprisonment is appropriate and serves the objectives of sentencing.

### III.     Restitution

The United States requests that the Court order restitution in the amount of $1,078,033.50 the amount necessary to make the victims of the defendant's fraud scheme whole. This total includes the principal and prejudgment interest, calculated using the date of sentencing, as well as the $40,664.23 of PPP processing fees that the SBA paid to third-party lenders for underwriting and servicing the defendant's PPP loans. (ECF No. 41.)

//

//

//

## IV. Conclusion

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of 57 months' imprisonment, followed by a three-year term of supervised release, restitution in the amount of $1,078,033.50, and a final entry of the order of forfeiture.

Dated this 7th day of July, 2023.

                          COLE FINEGAN
                          United States Attorney

By:  *s/ Nicole C. Cassidy*
      Nicole C. Cassidy
      Martha A. Paluch
      Assistant United States Attorneys
      1801 California Street, Suite 1600
      Denver, Colorado 80202
      Tel: (303) 454-0100
      Fax: (303) 454-0409
      Nicole.cassidy@usdoj.gov
      Martha.paluch@usdoj.gov
      Attorneys for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July, 2023, I electronically filed the foregoing **AND RESPONSE TO DEFENDANT'S MOTION FOR NON-GUIDELINE SENTENCE AND DEFENDANT'S SENTENCING STATEMENT (ECF NO. 35)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

*s/ Stephanie Price*
Supervisory Legal Assistant
United States Attorney's Office
